MANUEL AMADOR ÁVILA, peticionario, *v.* ADMINISTRACIÓN DE COMPENSACIONES POR ACCIDENTES DE AUTOMÓVILES, recurrida.

Número: CE-86-293     Resuelto: 21 de noviembre de 1986

*Aleida Varona Méndez,* abogada del peticionario; *Hilda María Arriaga Correa,* abogada de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

Manuel Amador Ávila, de 70 años de edad, fue víctima de un accidente automovilístico el 10 de septiembre de 1982. Sufrió lesiones en la pierna y brazo derecho. La Administración de Compensaciones por Accidentes de Automóviles (A.C.A.A.) le proveyó servicios médico-hospitalarios.

El 13 de septiembre de 1982 solicitó beneficios de compensación semanal por pérdida de ingresos. En su solicitud informó que "chiripeaba", [1] y que "estos trabajos son ocasional [*sic*] y a veces estaba un mes sin hacer nada". Por no cumplir con el requisito de presentar dentro de sesenta (60) días desde la reclamación la evidencia de ingresos perdidos y

---

[1] El *Diccionario General Ilustrado de la Lengua Española, Vox,* 3ra ed., Barcelona, Ed. Bibliograf, 1976, en la pág. 500 destaca, que en Perú, Puerto Rico y Santo Domingo el término chiripear significa "hacer negocios". El *"chiripero"* es, el "que una o muchas veces obtiene algo por chiripa (casualidad)".

no haber demostrado que durante los últimos seis (6) meses estuviera ocupando un empleo retribuido, su solicitud fue rechazada.

Amador Ávila pidió reconsideración. Adujo entonces, que al reclamar originalmente los beneficios, no fue informado que podía hacerlo en calidad de "ama de casa" pues sólo fue orientado en cuanto a pérdida de ingresos. Dado a que realizaba algunos trabajos de forma esporádica, retiró la solicitud de compensación semanal por pérdida de ingresos por incapacidad, y pidió los beneficios bajo la disposición correspondiente a "ama de casa". Llenó el formulario correspondiente. Testificó que vive solo y es el único administrador de su casa. Realiza todas sus labores domésticas, tales como cocinar los alimentos, lavar la ropa, fregar, comprar todo lo necesario en su casa, limpiar los muebles, etc. Como resultado del accidente se ha visto afectado e impedido de realizar las referidas tareas.

A.C.A.A. reiteró su negativa. En cuanto al reclamo bajo el concepto de "ama de casa" consignó:

> Los tribunales deben evitar cuestiones constitucionales si el caso puede ser resuelto por otros motivos, y en el presente caso, estamos resolviendo la presente reclamación en base a que el reclamante no cualifica para los beneficios de compensación semanal por pérdida de ingresos por incapacidad, según establece la Ley en su Sección 2.8. En adición, esta Administración no tiene facultad o potestad para entender en la constitucionalidad de la Ley.

Amador Ávila acudió en revisión al Tribunal Superior, Sala de San Juan, el cual resolvió lo siguiente:

> Hemos revisado nuevamente el expediente completo a la luz de la contestación de la ACAA a nuestra Orden de Mostrar Causa. Surge del récord que la razón que la ACAA denegó la solicitud del recurrente de beneficios como "amo de casa" no estuvo basada en discrimen por sexo, sino en que el recurrente, según su propio testimonio, no cualifica para dichos beneficios ya que se dedica a actividades retribuidas

fuera del hogar. En vista de lo anterior, No Ha Lugar a que se expida el auto de revisión solicitado. Apéndice I.

A solicitud de Amador Ávila, mediante orden de mostrar causa, revisamos.

## II

Notamos que A.C.A.A. denegó la solicitud porque el peticionario no pudo demostrar pérdida real de ingresos en un empleo remunerado durante los últimos seis (6) meses. En cuanto a los beneficios como "ama de casa" se negó a considerarla en un razonamiento circular basado en que tomó el reclamo del peticionario como una "pérdida de ingreso" de empleo. Paradójicamente señala que "no tiene facultad o potestad para entender en la constitucionalidad de la ley". En resumen, A.C.A.A. se abstuvo de resolver si el peticionario podía recibir los beneficios de ama de casa reservados en la ley exclusivamente para las "mujeres". Incidió.

Primeramente, la dificultad de sostener este razonamiento es que ambos beneficios son separados e independientes. Uno no depende del otro. Unirlos constituyó un error.

En segundo término, es cuestionable la conclusión de que una "ama de casa" que esporádicamente percibe pagos por labores fuera del hogar ("chiripear") no sea elegible para percibir los beneficios. Nos explicamos.

## III

La ley de la A.C.A.A. en sus Secs. 2(8) y 4(3)(g) dispone:

Sec. 2(8). Ama de casa—significa *una mujer,* independientemente de su estado civil, *cuya ocupación principal* es la de administrar, mantener y controlar un hogar y quien:

(1) no se dedica a una ocupación regular retribuida o (2) no comparece *regularmente* a un empleo fuera de su residencia. (Énfasis suplido.) 9 L.P.R.A. sec. 2052(8).

Sec. 4 (3) (g). Cuando la víctima que se incapacite fuera un ama de casa la Administración pagará a ésta un beneficio de $25 semanales sujeto a un máximo de 12 semanas. 9 L.P.R.A. sec. 2054 (3) (g).

A tono con esta visión legislativa, la Regla 9 (A) (4) del Reglamento aplicable, contempla que si la víctima incapacitada fuese ama de casa, "no será necesario demostrar pérdida de ingreso, ni se requerirá que la víctima haya tenido un empleo o haya realizado una actividad lucrativa antes del accidente, siempre que ella quede incapacitada en forma total y continua para continuar desempeñándose como ama de casa".

La lectura integral y armoniosa de estas disposiciones refleja que las "chiripas" llevadas a cabo por Amador Ávila no lo descalificaban automáticamente para recibir los beneficios como persona dedicada a las labores domésticas. Por su naturaleza, las "chiripas" representan una remuneración o negocio casual. No constituye una *ocupación regular*. Tampoco implican periodicidad y asistencia en un empleo fuera de su residencia. De otra parte, quedó demostrado que el peticionario vivía solo en su casa y realizaba todas las labores domésticas. No tenía empleo regular. Bajo la categoría de "ama de casa", la propia ley establece el monto del beneficio: $25 semanales hasta un máximo de 12 semanas. Concluimos que Amador Ávila cualifica prima facie para recibir dicho beneficio. (²)

---

(²) El peticionario recibe $191 de Seguro Social y $15 del Programa de Asistencia Nutricional. Conforme la ley, el beneficio del Seguro Social no se deduce. 9 L.P.R.A. sec. 2054, inciso (1) (h).

De otra parte, el requisito de notificación de aquella evidencia sobre los ingresos que generaba el solicitante, el cual debía hacerse dentro de 60 días desde la reclamación, pierde virtualidad si se enfoca la solicitud como de ama de casa. Tampoco tal presentación de evidencia dentro de dicho término es jurisdiccional. Puede ser excusada.

■ Con arreglo al mandato constitucional que garantiza la igual protección de las leyes, o la cláusula constitucional que prohíbe el discrimen por razón de sexo, y estando ante nos una clasificación basada en *sexo*, inherentemente sospechosa y sujeta a un escrutinio judicial estricto —*León Rosario* v. *Torres*, 109 D.P.R. 804, 813 (1980); *Com. de la Mujer* v. *Srio. de Justicia*, 109 D.P.R. 715, 728 y ss. (1980); *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267, 277–278 (1975)— en buena técnica adjudicativa, resolvemos que aquella parte del estatuto que define que ama de casa "significa una mujer" debe leerse para que comprenda a personas de ambos sexos. *P. R. P.* v. *E. L. A.*, 115 D.P.R. 631, 641–642 (1984); *Milán Rodríguez* v. *Muñoz*, 110 D.P.R. 610, 618–619 (1981). Por lo tanto, *reconocemos a Amador Ávila sus derechos al amparo de la ley y de nuestra Constitución.*

*Se dictará la correspondiente sentencia. El Tribunal Superior, Sala de San Juan, devolverá el asunto a la A.C.A.A. para que ésta proceda conforme lo expuesto.*

Los Jueces Asociados Señores Rebollo López y Hernández Denton no intervinieron.